[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 24, 2007
THOMAS K. KAHN
CLERK

_____

No. 05-16257
Non-Argument Calendar

_____

D. C. Docket Nos. 99-00755-CR-JAL
02-22923-CV-JAL

RICHARD MENENDEZ,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 24, 2007)**

Before BIRCH, HULL and FAY, Circuit Judges.

PER CURIAM:

Richard Menendez appeals the district court's denial of his pro se motion to vacate, under 28 U.S.C. § 2255. Menendez filed his motion after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat 1214 (1996). Therefore, the provisions of the AEDPA govern this appeal. We granted a certificate of appealability ("COA") on the following issues:

(1)     Whether the district court erred in finding that trial counsel was not ineffective for failing to call Menendez's father as a witness in the suppression hearing due to a conflict of interests.

(2)     Whether, in light of Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992) (en banc), the district court was required to address the claim of trial error raised in Menendez's reply to the government's response to his motion to vacate.

(3)     If so, whether the district court failed to address Menendez's claim that the district court erred in failing to advise him regarding the potential conflict of interests arising from joint representation.

For the reasons set forth more fully below, we affirm.[1]

In Clisby, we instructed district courts to resolve all claims for relief raised in a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254, regardless of whether habeas relief is granted or denied. Clisby, 960 F.2d at 936. When a

---

[1] On appeal, Menendez also argues three issues related to the legality of his arrest and the search of his vehicle and home. We will not consider these arguments because our review is limited to the issues specified in the COA. Murray v. United States, 145 F.3d 1249, 1250-51 (11th Cir. 1998).

2

district court fails to address all of the claims in a habeas petition, we "will vacate the district court's judgment without prejudice and remand the case for consideration of all remaining claims . . . ." Id. at 938. Thus, we consider whether this case must be remanded under Clisby before reaching the issue of trial counsel's ineffectiveness. See Callahan v. Campbell, 396 F.3d 1287, 1288-89 (11th Cir. 2005) (remanding under Clisby without considering the two claims which were addressed by the district court).

Although we liberally construe pro se pleadings, Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), arguments raised for the first time on appeal in a reply brief are not properly before us. See, e.g., Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003) (applying this rule to a pro se appellant). In his initial brief, Menendez only argues the merits of his claim, and does not even make a reference to Clisby. Thus, Menendez has abandoned the Clisby issue by failing to raise it in his initial brief.

We now consider the district court's finding that Menendez's trial counsel was not ineffective for failing to call Menendez's father as a witness in the suppression hearing due to a conflict of interests. We review de novo an ineffective assistance of counsel claim. Chandler v. United States, 218 F.3d 1305, 1312 (11th Cir. 2000) (en banc). We also review de novo the question of whether

3

an attorney labored under a conflict of interest.  Brownlee v. Haley, 306 F.3d 1043, 1058 (11th Cir. 2002).  The district court's subsidiary findings of fact are reviewed for clear error.  See Strickland v. Washington, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984).

Where an ineffective assistance claim is based on a conflict of interest, "a defendant must show first, that his attorney had an actual conflict of interest, and second, that the conflict adversely affected counsel's performance."  Pegg v. United States, 253 F.3d 1274, 1277 (11th Cir. 2001) (emphasis omitted); see also Mickens v. Taylor, 535 U.S. 162, 172 n.5, 122 S.Ct. 1237, 1244 n.5, 152 L.Ed.2d 291 (2002) ("An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance.").  "An 'actual conflict' of interest occurs when a lawyer has 'inconsistent interests.'"  Freund v. Butterworth, 165 F.3d 839, 859 (11th Cir. 1999) (en banc) (citation omitted).  The conflict cannot be merely possible, speculative, or hypothetical.  Reynolds v. Chapman, 253 F.3d 1337, 1342 (11th Cir. 2001).  To distinguish between actual and possible conflicts of interest,

> [w]e will not find an actual conflict of interest unless appellants can point to specific instances in the record to suggest an actual conflict or impairment of their interests. . . .  Appellants must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative causes of action, such as eliciting (or failing to elicit) evidence helpful to one client but

4

harmful to the other. If he did not make such a choice, the conflict remain(s) hypothetical.

Id. at 1343 (citation omitted) (omission in original). "To prove adverse effect, a defendant needs to demonstrate: (a) that the defense attorney could have pursued a plausible alternative strategy, (b) that this alternative strategy was reasonable, and (c) that the alternative strategy was not followed because it conflicted with the attorney's external loyalties." Id.

A criminal complaint was filed against Menendez and his father, Julio Menendez, alleging that the defendants conspired to possess with intent to distribute and possessed with intent to distribute cocaine and possessed a firearm during and in relation to the commission of a drug trafficking crime. Menendez and his father retained counsel, Manuel Gonzalez, Jr., to represent them in connection with these charges. An indictment was filed, naming Menendez as the sole defendant, and charging him with conspiracy to possess with intent to distribute and possession with intent to distribute cocaine. Menendez filed motions to suppress the evidence seized from a vehicle and his residence and to suppress his statements to law enforcement.

At the suppression hearing, Menendez testified, but his father, who was present at Menendez's residence during law enforcement's entry and search of the premises, did not testify. Menendez and the government's witnesses provided

5

conflicting accounts of what occurred during the stop of the vehicle Menendez was driving and at Menendez's residence. The magistrate judge, finding that credibility was the only issue and that the government's witnesses were credible and that Menendez was not, recommended the denial of Menendez's motions to suppress. Over Menendez's objections, the district court adopted the magistrate's report. Menendez subsequently entered a conditional plea of guilty to both counts of the indictment.

On appeal, Menendez argues that there was an actual conflict of interest because his father's testimony would have been beneficial to his case, but his counsel failed to call his father to the witness stand in an attempt to protect his father from re-indictment or possible impeachment. As to an adverse effect, Menendez argues that counsel could have called his father as a witness at the suppression hearing, that this strategy was reasonable, and that this strategy was not pursued because counsel was protecting his father.

Both Menendez and his father have consistently maintained that Julio Menendez was not involved in his son's illegal activities. The return of an indictment against Menendez but not against his father, however, created a situation in which a possible conflict could arise if the attorney was forced to choose between a strategy that would help Menendez but would place Julio

6

Menendez in danger of being indicted.  Cf. United States v. Jones, 52 F.3d 924, 926 (11th Cir. 1995) (holding that an actual conflict of interest existed where raising a selective prosecution defense on behalf of one client "would have had the effect of pressuring the government to indict [the attorney's] other client.") (footnote omitted).  However, this potential conflict did not develop into an actual conflict when counsel was faced with the question of whether to use Julio Menendez as a witness at the suppression hearing.  First, Julio Menendez stated that he wanted to testify at the hearing.  Second, based on the facts of this case, the possibility that the government would prosecute Julio Menendez as a result of his testimony at the suppression hearing was too speculative to create an actual conflict.

At the evidentiary hearing on Menendez's § 2255 motion, counsel admitted that it remained a concern that Julio Menendez could still be in trouble.  In his opinion, the government thought that Julio Menendez was involved, but did not have any evidence to charge him.  He testified that he was concerned that Julio Menendez would be prosecuted based on a witness coming forward with additional evidence.  However, there is no causal relationship between using Julio Menendez as a witness in the suppression hearing and the government receiving additional evidence against Julio Menendez based on information from a witness.

In preparation for the suppression hearing, Gonzalez met with Menendez and his father and discussed the fact that he was going to call Julio Menendez as a witness. The testimony that Julio Menendez was prepared to give would: (1) deny knowledge of or involvement in his son's illegal activities; (2) deny that he was ever in the garage; (3) suggest that the search of the residence occurred before the vehicle stop; and (4) corroborate his son's testimony that the search of the residence occurred without consent and that no Miranda[2] warnings were given to Menendez inside the house. There is nothing inherent in Julio Menendez's testimony that could result in his prosecution, as he denied knowledge of or involvement with the drugs and his testimony was consistent with this denial. Based on Julio Menendez's anticipated testimony, the possibility that the prosecutor could bring out some information on cross-examination that could lead to Julio Menendez's subsequent prosecution is too speculative to give rise to an actual conflict of interest.

Even if there was an actual conflict, Menendez cannot establish an adverse effect. Assuming that calling Julio Menendez at the suppression hearing is a plausible (which the government concedes) and reasonable alternative strategy, Menendez cannot establish that "the alternative strategy was not followed because

---

[2]    Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

8

it conflicted with the attorney's external loyalties." Reynolds, 253 F.3d at 1343. The magistrate and the district court credited counsel's explanation that the decision was strategic and not based on his duty of loyalty to Julio Menendez. To the extent that Julio Menendez and Menendez gave testimony at the evidentiary hearing to the effect that counsel made the decision because counsel was concerned about Julio Menendez getting into trouble as a result of testifying at the suppression hearing, the magistrate and the district court's decision to credit counsel's explanation did not amount to clear error. See Anderson v. City of Bessemer City, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error."). Counsel also testified that Menendez was concerned that his father could be implicated or ensnared if his father testified, and that he was "concerned from [Menendez's] part that his father could say something that somehow would implicate him in the matter . . . ." However, counsel's testimony, coupled with Julio Menendez's testimony that he wanted to testify, is indicative of an attempt to balance Menendez's competing interests, not of a conflict between counsel's external loyalties.

In light of the foregoing, we hold that the district court did not err in finding that counsel did not provide ineffective assistance due to a conflict of interest.

**AFFIRMED.**